SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
Fred R. Puglisi, Cal. Bar No. 121822
fpuglisi@sheppardmullin.com
Jay T. Ramsey, Cal. Bar No. 273160
jramsey@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:  310.228.3701

Attorneys for Defendants
MONEYLION, INC., MONEYLION OF
CALIFORNIA LLC, ML PLUS LLC, and
ML WEALTH, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGGIEH DICARLO, Individually and On Behalf of All Others Similar Situated,<br><br>                Plaintiff,<br><br>        v.<br><br>MONEYLION, INC., MONEYLION OF CALIFORNIA LLC, ML PLUS LLC, and ML WEALTH, LLC,<br><br>                Defendants. | Case No. 5:19-cv-01374-PSG-SHK<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>Date:    Monday, December 23, 2019<br>Time:    1:30 p.m.<br>Ctrm.:   6A, 6th Floor<br><br>*The Honorable Philip S. Gutierrez*<br><br><br>[Complaint Filed: June 24, 2019] |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, December 23, 2019, at 1:30 p.m., in Courtroom 6A of the above-captioned Court, First Street Courthouse, located at 350 West 1st Street, 6th Floor, Los Angeles, California 90012, Defendants MoneyLion, Inc., MoneyLion of California, LLC, ML Plus LLC, and ML Wealth, LLC (collectively, "MoneyLion") will and hereby do bring on for hearing their motion to compel arbitration of the First Amended Complaint (the "FAC") filed by Plaintiff Marggieh DiCarlo ("Plaintiff").  This Motion is made on the ground that the parties agreed to an arbitration provision that covers the claims asserted in the FAC.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Carleigh Lake, all other pleadings, papers, records and documentary materials on file or deemed to be on file, those other matters which may be judicially noticed, the arguments of counsel made when this Motion is heard, and such other evidence and materials as the Court may consider.

This Motion is made following conference of counsel pursuant to Local Rule 7-3.

Dated:  October 25, 2019         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By   _____
                    */s/ Jay T. Ramsey*
                    FRED R. PUGLISI
                    JAY T. RAMSEY

                 Attorneys for Defendants
              MONEYLION, INC., MONEYLION OF
            CALIFORNIA LLC, ML PLUS LLC, and ML
                    WEALTH, LLC

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND BACKGROUND FACTS ........................................ 1

II.    FACTS RELEVANT TO MOTION TO COMPEL ARBITRATION ............ 3

III.   THE COURT SHOULD COMPEL ARBITRATION ...................................... 6

     A.     Legal Standard ................................................................. 6

     B.     A Valid Agreement To Arbitrate Exists ................................ 6

     C.     The Claims In The FAC Fall Within The Scope Of The
           Arbitration Agreement ..................................................... 7

     D.     The Arbitration Provision Is Not Invalid Under *McGill* ...................... 8

           1.     "Public" injunctive relief is available in individual actions
               under the CLRA, the UCL, and the FAL ..................................... 9

           2.     The arbitration provision expressly permits the arbitrator
               to award any relief available under substantive law,
               including injunctive relief, and thus does not prohibit
               Plaintiff from seeking a "public injunction" ............................. 12

           3.     Plaintiff is not seeking a "public injunction," and so
               McGill does not provide a basis to avoid arbitration in the
               first instance ................................................................ 14

IV.    CONCLUSION ........................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*AT&T Mobility LLC v. Concepcion*
   563 U.S. 333 (2011) ...................................................................... 6, 7, 8

*Buckeye Check Cashing, Inc. v. Cardegna*
   546 U.S. 440 (2006) ............................................................................ 6

*DIRECTV, Inc. v. Imburgia*
   136 S. Ct. 463 (2015)........................................................................... 9

*Epic Systems Corp. v. Lewis*
   138 S. Ct. 1612 (2018)......................................................................... 9

*Gilmer v. Interstate/Johnson Lane Corp.*
   500 U.S. 20 (1991) .............................................................................. 7

*Johnson v. JP Morgan Chase Bank*
   2018 WL 4726042. (C.D. Cal. Sept. 18, 2018)....................... 14, 15, 16

*Kindred Nursing Centers Ltd. v. Clark*
   137 S. Ct. 1421 (2017)...................................................................... 8, 9

*Knutson v. Sirius XM Radio Inc.*
   771 F.3d 559 (9th Cir. 2014) ............................................................... 6

*Lee v. Postmates Inc.*
   2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) .................................... 13

*Magana v. DoorDash, Inc.*
   343 F. Supp. 3d 891 (N.D. Cal. 2018)................................................ 13

*McGovern v. U.S. Bank N.A.*
   362 F. Supp. 3d 850 (S.D. Cal. 2019) ............................................... 16

*Morales v. Lexxiom, Inc.*
   2010 U.S. Dist. LEXIS 151809 (C.D. Cal. Jan. 29, 2010).................... 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983) ............................................................................... 7

DEFENDANTS' MOTION TO COMPEL ARBITRATION

*Rent-A-Center, West, Inc. v. Jackson*
   561 U.S. 63 (2010) ........................................................................ 7

*Rivera v. Uniqlo California, LLC*
   2017 WL 6539016 (C.D. Cal. Sept. 8, 2017)...................................... 13

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) .......................................................... 7

*Sponheim v. Citibank, N.A.*
   2019 WL 2498938 (C.D. Cal. June 10, 2019)................................. 15, 16

**State Cases**

*Cal. Corr. Peace Officers Ass'n v. State of Calif.*
   142 Cal. App. 4th 198 (2006) .......................................................... 6

*Cruise v. Kroger Co.*
   233 Cal.App.4th 390 (2015) ............................................................ 6

*EFund Capital Partners v. Pless*
   150 Cal. App. 4th 1311 (2007) ........................................................ 8

*Izzi v. Mesquite Country Club*
   186 Cal. App. 3d 1309 (1986) ......................................................... 8

*McGill v. Citibank, N.A.*
   2 Cal. 5th 945 (2017)................................................................passim

*Serafin v. Balco Properties Ltd., LLC*
   235 Cal. App. 4th 165 (2015) ...................................................... 6, 7

*United Transportation Union, AFL/CIO v. Southern Cal. Rapid Transit Dist.*
   7 Cal. App. 4th 804 (1992) ............................................................. 7

*Wolitarsky v. Blue Cross of Cal.*
   53 Cal. App. 4th 342 (1997) ........................................................... 7

Statutes, Rules, Regulations, Constitutional Provisions

Cal. Bus. & Prof. Code § 17204 .......................................................... 10

Cal. Bus. & Prof. Code § 17535 .......................................................... 10

SMRH:4849-2078-9162.3

## <u>MOTION TO COMPEL ARBITRATION</u>

MoneyLion filed a Motion to Compel Arbitration of the original Complaint. (*See* Dkt. No. 16.)  Plaintiff Marggieh DiCarlo ("Plaintiff") filed the First Amended Complaint ("FAC") as a matter of right, mooting MoneyLion's original motion. The FAC adds allegations attempting to address (unsuccessfully) one of MoneyLion's arguments in favor of compelling arbitration, but does not add any allegations to address MoneyLion's primary argument – namely, the arbitration agreement between the parties, which Plaintiff admits she agreed to, and California Supreme Court precedent expressly permit Plaintiff in her individual capacity to seek a public injunction in arbitration.  As such, Plaintiff's reliance on *McGill v. Citibank, N.A.,* 2 Cal. 5th 945 (2017), is misplaced and of no import.  Accordingly, MoneyLion's Motion to Compel Arbitration of the FAC should be granted.

## I.   <u>INTRODUCTION AND BACKGROUND FACTS</u>

MoneyLion[1] is an award-winning financial services application[2] that helps consumers save money and build credit.  It was founded in 2013 with the goal of empowering consumers to take greater control of their financial lives.  Its primary focus is on helping the financially underserved by promoting financial literacy, wellbeing, and independence.

In fall 2017, to supplement its other free services, MoneyLion released an innovative membership called MoneyLion Plus, pursuant to which members, in

---

[1]   "MoneyLion" refers collectively to defendants MoneyLion, Inc., MoneyLion of California, LLC, ML Plus LLC, and ML Wealth, LLC.  Each played a different role and, depending on the theories that Plaintiff ultimately asserts, not all may be proper parties.  Either way, the arbitration agreement applies to claims against all four.

[2]   2019 Finovate Best Digital Bank, 2019 Nominee Benzinga Best Digital Bank, 2019 Webby Award People's Choice for Best Financial Services / Bank  and 2018 Celent Model Bank Award, 2018 Top Emerging Tech Company at LendIt, 2018 Benzinga Global FinTech Award for Best Under-banked or Emerging Market Solution, and a member of the Deloitte Fast 500.

exchange for a monthly membership fee of $29, get access to a range of additional financial services. The MoneyLion Plus Membership includes access to a no-fee, dynamically-managed investment account operated by an SEC-registered investment adviser; an FDIC insured checking account and debit card with no fees; free ATM access at over 55,000 locations (more than Chase, Wells Fargo and Bank of America combined); free credit monitoring; a discount program at national retailers; low-cost credit; 0% APR cash advances; an ecosystem of rewards and rewards points for positive financial behavior, which can be redeemed at retailers nationwide; financial literacy materials; and more.

As part of the program, Plus Program members were required to save $50 into their investment accounts each month, with the goal of reaching $2,000 in investments in under two years.  The Plus membership also gives consumers access to an immediate $500 loan with 5.99% APR. Such loan offers are virtually unheard of for consumers in this demographic.  The annual value of all the services provided to Plus members is over $1,000 per year.

Importantly, the entire monthly membership fee for the Plus membership is easily offset—for each day that a member logs into his or her account, MoneyLion credits him or her a dollar and transfers that dollar into their Investment Account.  If a member logs in twenty-nine times per month, the member effectively off sets their membership fee and saves $79 that month in their Investment Account ($50 + $29). This provides an incentive for members to log into their account, view the financial literacy cards, track their savings and spending, and participate in investing, all of which helps create better financial habits for the member.

Unfortunately, Plaintiff stopped making the program payments to which she had agreed.  Plaintiff signed up for the Plus plan, and initially made her monthly payments and deposited funds into her investment account.  She also took out a loan for $500 and made the initial payments.  And she took advantage of MoneyLion's dollar-per-day cashback benefit by logging into her account 53 days, thereby

offsetting her membership fee and building her Investment Account balance.  But then things slowly started to change.  Plaintiff failed to make payments on her loan, stopped making the required monthly deposits into her investment account, and stopped paying the monthly membership fee.  Now, despite signing numerous agreements clearly outlining the requirements of the membership and despite not living up to her obligations, Plaintiff claims that she is allegedly stuck in a membership plan she no longer wants. Plaintiff is suing MoneyLion on behalf of herself and a putative class of California residents for purported violations of California and federal law.  She seeks to represent a class of MoneyLion Plus members who were charged a monthly fee after contractually agreeing to pay that monthly fee in order to avail themselves of MoneyLion's expansive financial services offerings.

MoneyLion fully expects to prevail, but the merits of this case are for another day.  At this stage, all that matters is that Plaintiff agreed to arbitrate her dispute.  As part of signing up with MoneyLion and for the Plus membership, and along with obtaining the investment account and a $500 loan, Plaintiff signed a series of agreements, all of which incorporated a dispute resolution provision, which she also separately signed.  She attaches these agreements to her FAC as Exhibits A through D, and expressly admits she agreed to each agreement.  The dispute resolution provision (Exhibit D to the FAC) requires arbitration of her claims on an individual basis – including her request for an injunction.  In accordance with that provision, the Court should compel arbitration of the FAC and dismiss the action.

## II.     FACTS RELEVANT TO MOTION TO COMPEL ARBITRATION

Plaintiff alleges that in July 2018 she downloaded the MoneyLion App and, shortly thereafter, applied for and obtained a loan.  (FAC ¶ 8, 25.)  She alleges that MoneyLion then engaged in a purportedly unfair and wrongful scheme that resulted in her getting charged various fees and not having access to her money.  (*See generally* FAC.)  Based on these allegations, she asserts on behalf of herself and a

California class causes of action for (i) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (ii) Violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; (iii) Violation of California's Anti-Usury Laws (Cal. Const. Art. XV, §1 and Cal. Civ. Code § 1916-2); (iv) Violations of Truth in Lending Act and Regulation X (15 U.S.C. §§ 1601 et seq.); and (v) Violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.  (FAC ¶¶ 128-196.)

Plaintiff, however, agreed to arbitrate her claims.  Plaintiff expressly concedes that she entered into various agreements with Defendants (FAC ¶¶ 26, 31) and attaches those agreements to the FAC as Exhibits A through C.  Plaintiff signed all three agreements (*see* Exs. A-C), and all three agreements – the "MoneyLion Membership Program and Services Agreement Terms and Conditions" (FAC Ex. A, pgs. 2-3), the "MoneyLion Installment Loan Pledge and Security Agreement" (FAC Ex. B, pgs. 2-3), and the "ML Wealth, LLC Investment Advisory Agreement" (FAC Ex. C, § 23) – incorporate by reference the "Disputes Agreement" (FAC Ex. D), which she also separately signed.  There is no question of fact as to whether Plaintiff agreed to the Disputes Agreement.  Plaintiff acknowledges as much.  (FAC ¶ 121 ["As a condition to enrolling in ML Plus and against upon obtaining the Loan, MoneyLion requires users to sign 'Agreements For Resolving Disputes,' attached to this Complaint as Exhibit D."].)

The Disputes Agreement includes an arbitration provision that requires arbitration of Plaintiff's claims.  The key provisions are summarized here.

***First***, the arbitration provision states that it "shall be governed by the [Federal Arbitration Act], and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration."  (FAC, Ex. D, § 9.)

***Second***, the arbitration provision states that "you and we agree that either party may elect to require arbitration of any Claim."  (*Id.*, Arbitration Provision, pg. 2.)  "Claim" is defined broadly to include

-4-

1

2

3

4

5

6

7

8

9

10

> any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services, programs, loans, investments or other financial services you request or we provided to you or on your behalf ("Services"); any of our marketing, advertising, solicitations and conduct relating to your request for Services; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. ***"Claim" is to be given the broadest possible meaning and includes claims of every kind and nature***, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on any constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. ***It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief***.

11

(*Id.*, pg. 1 [emphasis added].)

12

    ***Third***, any claims asserted must be on an individual basis.  Neither party can

13

"participate in a class action in court or in arbitration, either as a class

14

representative, class member or class opponent," and neither party may "act as a

15

private attorney general in court or in arbitration."  (*Id.* § 9.)

16

    ***Fourth***, despite the requirement that Plaintiff proceed individually, the

17

arbitrator is permitted to award whatever relief is available under applicable law in

18

an individual action.  The arbitration provision states:

19

> ***The arbitrator shall*** follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall ***be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including, without limitation,*** compensatory, statutory and punitive damages. . . , declaratory, ***injunctive and other equitable relief***, and attorneys' fees and costs.

20

21

22

23

(*Id.* § 9 (emphasis added).)

24

    ***Fifth***, Plaintiff was free to reject the Arbitration Provision at any time within

25

30 days after signing the Agreement.  (*Id.* § 1.)  Plaintiff did not elect to opt out.

26

27

28

III.   **THE COURT SHOULD COMPEL ARBITRATION**

   A.   **Legal Standard**

   The Federal Arbitration Act ("FAA") provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA requires courts to compel arbitration if (1) a valid agreement to arbitrate exists, and (2) the dispute falls within the scope of that agreement.  *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564-65 (9th Cir. 2014).[3]  See also, *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)

   B.   **A Valid Agreement To Arbitrate Exists**

   Under both federal and California law, "the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate."  *Cruise v. Kroger Co.*, 233 Cal.App.4th 390, 396 (2015) (italics omitted); *Knutson*, 771 F.3d at 564-65.  In this regard, federal courts look to state contract law to determine whether an agreement was formed.  *See Knutson*, 771 F.3d at 564-65.  In California, general principles of contract law apply when determining whether two parties have entered into a binding arbitration agreement.  *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 173 (2015).

---

[3]   Similarly, the California Arbitration Act ("CAA") provides that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable . . . ."  Cal. Code of Civil Proc. § 1281.  Upon request of a party to such an arbitration agreement, the court *must* order arbitration of the controversy if it determines that:  (1) "an agreement to arbitrate the controversy exists"; and (2) "a party thereto refuses to arbitrate such controversy . . . ."  *Id.* at § 1281.2 .  If a claim must be arbitrated, a court may not consider its merits.  *Id.*; *Cal. Corr. Peace Officers Ass'n v. State of Calif.*, 142 Cal. App. 4th 198, 205 (2006).

Here, there is no dispute that the parties entered into a binding agreement and that Plaintiff agreed to the Disputes Agreement. Plaintiff attaches the agreements to her FAC and they are electronically signed by her. Because those agreements have (or incorporate) an arbitration provision, a valid agreement to arbitrate exists.

**C.** **The Claims In The FAC Fall Within The Scope Of The Arbitration Agreement**

"The FAA embodies a clear federal policy in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). As a result, when determining whether a claim falls within the scope of an arbitration agreement, courts must indulge every presumption "in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983). The party resisting arbitration has the burden of proving that the claims are unsuitable for arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Relevant here, arbitration provisions that govern "all" claims, disputes, and controversies between the parties, without exception, cover all claims. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (enforcing arbitration agreement governing "all" disputes that included class action waiver); *Morales v. Lexxiom, Inc.*, 2010 U.S. Dist. LEXIS 151809, * 18-19 (C.D. Cal. Jan. 29, 2010) (enforcing arbitration agreement governing "any" dispute because the language is "all encompassing").[4]

---

[4] California law is the same. It requires courts to read arbitration clauses broadly, and doubts as to the scope of an arbitration clause should "be resolved in favor of sending the parties to arbitration." *United Transportation Union, AFL/CIO v. Southern Cal. Rapid Transit Dist.*, 7 Cal. App. 4th 804, 808 (1992). The presumption of arbitrability grows even stronger when the arbitration clause is broad, sweeping in "any claims arising from or relating to" an agreement or "any claims" between the parties. *See Wolitarsky v. Blue Cross of Cal.*, 53 Cal. App. 4th 342, 348 (1997); *Serafin v. Balco Properties Ltd.*, 235 Cal. App. 4th 165, 182

DEFENDANTS' MOTION TO COMPEL ARBITRATION

There can be no question that Plaintiff's FAC falls within the scope of the arbitration provision. The provision applies to all "Claims," which are defined to include "any claim, dispute or controversy between you and us (or our related parties) that arises from or relates in any way to this Agreement or any services, programs, loans, investments or other financial services you request or we provided to you or on your behalf . . . ." Plaintiff's FAC is about the services, loans, investments, and other financial services provided by MoneyLion. As a result, the FAC and the claims it asserts fit within the scope of the arbitration provision.

**D.**   **The Arbitration Provision Is Not Invalid Under *McGill***

In her FAC, Plaintiff alleges that the arbitration provision should not be enforced because (1) California law, under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), holds that a dispute resolution provision that precludes a consumer from seeking a "public injunction" in any forum is invalid; (2) the MoneyLion arbitration provision purportedly precludes the award of a "public injunction" in the arbitral forum (FAC ¶ 125); and (3) the arbitration provision contains a "poison pill" clause providing that the entire provision is invalid if the provision purportedly prohibiting the award of a "public injunction" is invalid (FAC ¶ 124).[5]

_____

(2015) (parties obliged to submit their claims to arbitration where provision includes expansive language covering "all" disputes, even including the threshold issue of arbitrability). Agreements calling for the arbitration of "all claims" or "all controversies" require arbitration not only of contract claims, but also tort claims. *See, e.g.*, *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1322 (2007); *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1315 (1986) *superseded by statute on other grounds*.

[5]   As explained below, *McGill* is not implicated by the enforcement of MoneyLion's Arbitration Agreement. For the purposes of preserving the point of law, the application of *McGill* or cases following it are contrary to long standing United States Supreme Court precedent and cannot be the basis to avoid arbitration. *McGill*, as a state rule, is not a ground "at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2. See *Kindred Nursing Centers Ltd. v. Clark*, 137 S. Ct. 1421 (2017). Nor does McGill fall into the savings clause of the FFA. *Concepcion*, 563

This argument fails for two simple reasons.  *First*, the arbitration provision does not prohibit the award of a "public injunction."  "Public" injunctive relief is available in *individual actions* under the CLRA, UCL, and FAL (the only three causes of action under which Plaintiff seeks an injunction), and the arbitration provision *expressly permits* the award of any relief available in individual actions under applicable law, including *injunctive relief* (it states:  "The arbitrator . . . shall be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including . . . *injunctive* and other equitable relief. . . ."). *Second*, Plaintiff is not seeking a "public injunction," and so any bar to arbitration in *McGill* does not apply in the first instance.  A "public injunction" seeks relief on behalf of the public at large; a "public injunction" is not an injunction that, like the injunction Plaintiff seeks, affects a narrow class of consumers who are merely seeking to resolve private disputes between two parties.  These issues are explained in detail below.

### 1.   *"Public" injunctive relief is available in individual actions under the CLRA, the UCL, and the FAL*

An injunction under the CLRA, UCL, and FAL (the only three causes of action under which Plaintiff seeks an injunction) can be either "private" or "public." Important here, the California Supreme Court in *McGill* made clear that *private and public injunctions are both available in individual actions* under the CLRA, UCL, and FAL.  *Id.* at 954-55, 959-61.  Plaintiff completely ignores the California Supreme Court's statements on settled law and, in her effort to avoid arbitration, is asking that this Court do the same.  This Court, however, should not ignore binding California Supreme Court rulings on issues of California law.

---

U.S. at 353 (Thomas, J., concurring in the judgment). State law defenses outside the savings clause are expressly preempted. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018); *Kindred Nursing*, 137 S. Ct. at 1426-27, and *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015).

-9-

1    As to the CLRA, the statute includes a list of unlawful "methods of

2    competition and unfair or deceptive acts or practices" (Cal. Civ. Code § 1770), and

3    then authorizes "[a]ny consumer who suffers any damage as a result" of any of the

4    unlawful acts or practices to "bring an action" seeking an "order enjoining the

5    methods, acts, or practices" (*id.*, § 1780, subd. (a)(2)).  Injunctive relief (whether

6    public or private) is thus available under the CLRA to individual consumers

7    damaged by the allegedly wrongful acts; there is no requirement that the case be

8    brought as a class action or by an individual acting as a private attorney general.  *Id.*

9    *See also McGill*, 2 Cal. 5th at 954.

10    Similarly, both the UCL and the FAL permit a private individual, "who has

11    suffered injury in fact and has lost money or property" as a result of the unfair

12    competition (Cal. Bus. & Prof. Code § 17204) or the false advertising (*id.* § 17535)

13    to seek injunctive relief (*id.* § 17203 ["Any person who engages, has engaged, or

14    proposes to engage in unfair competition may be enjoined in any court of competent

15    jurisdiction."]; *id.* § 17535 ["Actions for injunction under this section may be

16    prosecuted . . . by any person who has suffered injury in fact and has lost money or

17    property as a result of a violation of this chapter."]).  Again, injunctive relief

18    (whether public or private) is thus available under the UCL and the FAL to

19    individual consumers injured by the alleged wrongs; there is no requirement that the

20    case be brought as a class action or by an individual acting as a private attorney

21    general.  *Id.* §§ 17203, 17204, 17535.  *See also McGill*, 2 Cal. 5th at 954-55, 959-

22    61.

23    The history of California's consumer protection statutes also confirms that

24    public injunctive relief is available in individual actions, and that a party need not

25    sue in a class action or as a "private attorney general" to obtain such relief.  As the

26    California Supreme Court explained in *McGill*, "[b]efore 2004, [the UCL and FAL]

27    authorized actions by 'any person acting for the interests of itself, its members or the

28    general public." 2 Cal. 5th at 958.  At that time, an individual actually injured by

-10-

the allegedly wrongful act could of course sue – they would be a "person acting for the interests of itself" – and that individual could obtain injunctive relief as detailed above. *Id.* at 958-59. In addition, before 2004, an individual who had ***not*** been injured by the allegedly wrongful act could also sue and obtain injunctive relief – they would be a "person acting for the interests of . . . the general public." *Id.* These actions, by uninjured individuals, were referred to as actions by "private attorneys general." *Id.* In 2004, California voters passed Proposition 64, which ended the practice of actions by "private attorneys general." *Id.* Proposition 64 "identified the filing of lawsuits by private attorneys on behalf of the general public as a misuse of the unfair competition laws." *Id.* Proposition 64 thus codified the current law, which allows actions by the California Attorney General and similar public officials, and then individuals too, but only individuals actually injured by the allegedly wrongful act. *Id.*

Notably, after reviewing the above history, the California Supreme Court in *McGill* concluded that nothing in the current law, as modified by Proposition 64, "preclude[s] a private individual who has suffered injury in fact and has lost money or property as a result of a violation of the UCL or the false advertising law [FAL] (Bus. & Prof. Code §§ 17204, 17535) – and who therefore has standing to file a private action – from requesting ***public injunctive relief*** in connection with that action." *Id.* (emphasis added). The Court further stated that there is no requirement that the action be brought as a class action in order to obtain public injunctive relief: "This requirement has never been imposed with regard to requests to enjoin future wrongful business practices that will injure the public, and we find nothing in the ballot materials for Proposition 64 suggesting an intent to link or restrict such [injunctive] relief to the class action context." *Id.*

Put simply, Plaintiff is permitted to seek and obtain a "public" injunction in an individual action under the UCL, the FAL, and the CLRA. There is ***no requirement*** that she bring a class action or act as a private attorney general to do

-11-

so.  Because, as explained below, the arbitration provision permits the arbitrator to award any relief available under substantive law (including, therefore, a public injunction), any bar to arbitration in *McGill* is not applicable.

> **2.     The arbitration provision expressly permits the arbitrator to award any relief available under substantive law, including injunctive relief, and thus does not prohibit Plaintiff from seeking a "public injunction"**

Unlike the arbitration provision at issue in *McGill*, and contrary to Plaintiff's suggestion, the arbitration provision in this case does not prohibit the arbitrator from awarding a "public injunction" to a private litigant such as Plaintiff.

As set forth above, the arbitration agreement in this case expressly permits the arbitrator to award whatever relief is available under applicable law, including injunctive relief.  The provision states:  "The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and **shall be authorized to award all remedies available *in an individual lawsuit* under applicable substantive law**, including, without limitation, compensatory, statutory and punitive damages. . . , declaratory, *injunctive* and other equitable relief, and attorneys' fees and costs."  (FAC, Ex. D § 9 [emphasis added].)

Because injunctive relief, including "public" injunctive relief, is available in individual actions under the CLRA, the UCL, and the FAL, and because the arbitration provision expressly permits the arbitrator to award "all remedies available in an individual lawsuit under applicable substantive law, including . . . injunctive . . . relief," the arbitration provision does not preclude the award of public injunctive relief.  The provision thus does not run afoul of the prohibition in *McGill*.

In her FAC, Plaintiff argues that because the arbitration provision prohibits Plaintiff from "participat[ing] in a class action" and "act[ing] as a private attorney general in court or in arbitration" (FAC ¶ 122, citing Ex. D, § 5), the provision

-12-

1  somehow precludes the award of public injunctive relief.  This argument fails,

2  however, as a matter of law because, as explained above, the California Supreme

3  Court has held that there is no requirement that plaintiff pursue relief either on

4  behalf of a class or as a private attorney general in order to obtain public injunctive

5  relief.

6        Consistent with that, courts analyzing arbitration provisions that permit the

7  award of any relief available under substantive law hold that *McGill* does not

8  provide a basis to avoid arbitration.  *Rivera v. Uniqlo California, LLC*, No.

9  LACV1702848JAKJPRX, 2017 WL 6539016, at *15 (C.D. Cal. Sept. 8, 2017) ("In

10 *McGill*, the arbitration agreement did not allow for injunctive relief.  The Arbitration

11 Agreement [here] does not have such a limitation. It permits the arbitrator to 'award

12 any remedy to which a party is entitled under applicable law.'"); *Magana v.*

13 *DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D. Cal. 2018) ("The Arbitration

14 Agreement specifically provides that 'Except as provided in the Class Action

15 Waiver, the Arbitrator may award all remedies to which a party is entitled under

16 applicable law and which would otherwise be available in a court of law[.]'.

17 Therefore, Magana can seek public injunctive relief in arbitration under the terms of

18 the agreement, so the agreement is enforceable under *McGill*."); *Lee v. Postmates*

19 *Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802, at *9 (N.D. Cal. Oct. 15,

20 2018), motion to certify appeal granted on other grounds, 2019 WL 1864442 (N.D.

21 Cal. Apr. 25, 2019) (holding that *McGill* did not permit avoidance of arbitration

22 where "a separate provision of the section of the Fleet Arbitration governing

23 arbitration provides that, except for the class action waiver, 'the arbitrator may

24 award all remedies to which a party is entitled under applicable law and which

25 otherwise be available in a court of law'").

26

27

28

### 3.   Plaintiff is not seeking a "public injunction," and so McGill does not provide a basis to avoid arbitration in the first instance

In *McGill*, the California Supreme Court defined "public" injunctive relief as "relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." 2 Cal. 5th at 955. By contrast, "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff – or to a group of individuals similarly situated to the plaintiff – does not constitute public injunctive relief." *Id.*

In applying this test since *McGill*, courts have generally held that a party seeking monetary relief for damages suffered on behalf of a class of consumers (as opposed to the general public), is seeking only private injunctive relief, not public injunctive relief, even if the party also seeks an injunction to prohibit the same allegedly injurious practices going forward. "Merely requesting relief which would generally enjoin a defendant from wrongdoing does not elevate requests for injunctive relief to requests for <u>public</u> injunctive relief." *Johnson v. JP Morgan Chase Bank*, 2018 WL 4726042. *6 (C.D. Cal. Sept. 18, 2018) (emphasis in original).

For example, in *Johnson v. JP Morgan Chase Bank*, a plaintiff sought monetary and injunctive relief based on JPMorgan's allegedly wrongful practice of charging overdraft fees, insufficient funds fees, and out of network ATM fees. 2018 WL 4726042 at *1. The court concluded that the injunctive relief that the class plaintiffs sought did not constitute public injunctive relief, despite "vague and generalized" prayers for "public injunctive relief, including to ensure compliance with the UCL." *Id.* at *7. The court reasoned:

> While Plaintiffs craft their allegations and prayer for relief to request expressly a general injunction and public injunctive relief, a closer inspection reveals that the relief sought is actually intended to redress and prevent further injury to a group of plaintiffs who have already been injured by JPMorgan's allegedly unlawful practices regarding overdraft and insufficient funds fees. Indeed,

-14-

> the classes Plaintiffs seek to represent are not comprised of the general public; instead, they are comprised of persons who have already incurred the allegedly unlawful fees.

*Id.* The court further noted that, even though a class of JPMorgan customers could constitute a substantial number of people, it was still "an inherently circumscribed group." *Id.* The Court explained:

> Plaintiffs argue that when the largest bank in the country misleads consumers in California, it is for the benefit of all consumers to enjoin the offending conduct. But the Court finds that the size of a class cannot, on its own, elevate a class action seeking [an] injunction into a matter seeking public injunctive relief. ***This would convert any consumer action against a large company into "public injunctive" relief.***

*Id.* (emphasis added). The court further reasoned that the primary purpose of the action was to obtain monetary relief, and thus any benefit to the public of injunctive relief would be only incidental. The Court stated:

> Furthermore, the Court finds that any benefit bestowed on the public would be incidental to Plaintiffs' primary purpose of seeking redress for their own injuries. Just after these vague and generalized injunctive requests, Plaintiffs request "judgment awarding Plaintiffs and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class" . . . and "judgment awarding actual and punitive damages to Plaintiffs and the Class in an amount to be determined at trial." The Court finds these prayers for monetary relief to be the heart of Plaintiffs' claims.

*Id.*

Other courts have similarly held that claims seeking primarily monetary relief to correct prior wrongs on behalf of an individual or a class of similarly situated consumers do not seek "public" injunctive relief under *McGill*. *See Sponheim v. Citibank, N.A.*, No. SACV19264JVSADSX, 2019 WL 2498938, at *1 (C.D. Cal. June 10, 2019) (holding that plaintiff was not seeking a "public" injunction in an action seeking redress for bank's practice of charging of foreign transaction fees);

1   *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 854 (S.D. Cal. 2019) (same re

2   action seeking redress for ATM withdrawal fees).

3        The prayer for a "public injunction" in the FAC here is indistinguishable from

4   the prayers in the cases cited above.  Plaintiff challenges fees charged by

5   MoneyLion to its customers, just as the plaintiffs in *Johnson*, *Sponheim*, and

6   *McGovern* challenged the fees charged by the bank defendants.  The primary focus

7   of Plaintiff's FAC is also monetary damages, which are sought on behalf of Plaintiff

8   and a putative class of California residents.  That putative class is not the public at

9   large, but only customers of MoneyLion who had a premium Plus program

10  membership.  Plaintiff is thus not seeking a "public injunction," despite claiming

11  that she is.  Accordingly, *McGill* does not apply in the first instance.

## IV.   CONCLUSION

13       For the foregoing reasons, MoneyLion respectfully requests that the Court

14  grant this motion, compel arbitration of Plaintiff's claims, and dismiss the action.

15  Dated:  October 25, 2019

                       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

18            By    _____

                       */s/ Jay T. Ramsey*

19                    FRED R. PUGLISI

                  JAY T. RAMSEY

21                Attorneys for Defendants

22          MONEYLION, INC., MONEYLION OF

23       CALIFORNIA LLC, ML PLUS LLC, and ML

                  WEALTH, LLC