Kolin C. Tang (SBN 279834)
**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
1401 Dove Street, Suite 540
Newport Beach, CA 92660
Phone: 323-510-4060
Fax: 866-300-7367
Email: ktang@sfmslaw.com

[*Additional Counsel for Plaintiffs Listed on Signature Page*]

*Counsel for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARGGIEH DICARLO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MONEYLION, INC., MONEYLION OF CALIFORNIA LLC, ML PLUS LLC, and ML WEALTH, LLC, <br><br> Defendants. | Case No. 19-cv-01374-PSJ-SHK <br><br> **PLAINTIFF'S AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** <br><br> Amended Complaint Filed: October 15, 2019 <br><br> Judge: Hon. Philip S. Gutierrez <br> Date: December 23, 2019 <br> Time: 1:30 p.m. <br> Courtroom: 6A, First Street Courthouse <br><br> **Dated: December 2, 2019** |

# TABLE OF CONTENTS

**INTRODUCTION**......................................................................................1-5

   **I.**   **Plaintiff's Allegations in the FAC**.......................................1-3

   **II.**  **Plaintiff's FAC Brings Claims for Private Relief and, Separately, for Public Injunctive Relief**..................................................... 3

   **III.** **MoneyLion's Arbitration Agreement and Its Limitations on Non-Individual Relief**.............................................................3-5

   **IV.** **The Nature of Public Injunctive Relief and the *McGill* Rule**........................... 5

**ARGUMENT** .........................................................................................6-25

   **I.**  **The Southern District of California Already Found the Same Arbitration Agreement Unenforceable Under *McGill***.....................7-9

      **A. Speedy Cash Could Not Credibly Dispute That Section 5 Prohibits Public Injunctive Relief** ............................................... 7

      **B. Speedy Cash's Identical "All Remedies" Clause Confirmed, Not Avoided, *McGill*'s Application** ............................................... 8

      **C. Speedy Cash's Claim That the Plaintiffs Actually Sought Private Relief Was "Unwinning"; MoneyLion's is Even Less Persuasive**...................8-9

   **II.** **The Court Can Conclude that the Arbitration Agreement is Invalid Under *McGill* Without Reference to *Speedy Cash***...................9-18

      **A. Section 5(E) Prohibits Public Injunctive Relief Because Such Claims Necessarily Require "Joining or Consolidating" Individual Claims with Claims "Involving" Others**..................................9-10

      **B. Section 5(D)'s Prohibition on "Acting as a Private Attorney General" Separately Bars Claims for Public Injunctive Relief**.........................10-18

         1. The California Supreme Court Has Consistently Characterized Public Injunctive Relief as a "Private Attorney General" Action......................11

         2. Characterizing a Public Injunction Claim as a Private Attorney General Action Comports with the Term's Usage in American Law .............11-14

         3. The Private Attorney General Fee Doctrine Further Supports Characterizing a Public Injunctions as a Private Attorney General Action.......................14

---

4.  MoneyLion's Argument that a Public Injunction is Not a Private Attorney General Action Mischaracterizes *McGill* and Proposition 64 ............14-18

   i.   *Proposition 64 Did Not Alter the Private Attorney General Character of Public Injunctions* ...............................................14-16

   ii.  *Nor Was the Limitless Standing Provision of The Pre-Proposition 64 UCL the Source Its Private Attorney General Character* ...16-18

III.  **MoneyLion's Argument Under the "All Remedies" Clause Cannot Rescue Its Arbitration Agreement from *McGill***...........................................................18-22

   A. **MoneyLion's Argument Confuses Individual Standing with Individual Relief**......................................................................................................18-19

   B. **MoneyLion's "All Remedies" Argument Separately Fails as a Matter of Contract Interpretation** .......................................................................19-22

IV.  **Plaintiff Has Adequately Pleaded Claims for Public Injunctive Relief** ...22-25

   A. **MoneyLion's Contrived "Primary Purpose" Test for Public Injunction Pleadings Is Contrary to California Law and Federal Pleading Rules** ........................................................................................................22-23

   B. **Plaintiff's FAC States Valid Claims for Public Injunctive Relief Under *Twombley* and *McGill*** ............................................................................22-25

      1.  The FAC Seeks Public Injunctive Relief in Name and Substance .....23-24

      2.  *Johnson*, *Sponheim*, and *McGovern* are Distinguishable Because They Did Not Involve Misrepresentations to the Public....................................24-25

**CONCLUSION**................................................................................................................25

# TABLE OF AUTHORITES

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)...................................................23

*Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2017 WL 4805577 (N.D. Cal. Oct. 25, 2017).............................................................................................................................10

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831 (9th Cir. 2019)....……………….........20

*Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066(1999).........................11, 13

*Burdon Cent. Sugar Refining Co. v. Payne*, 167 U.S. 127 (1897) ...............................19

*Cruz v. PacifiCare Health Sys., Inc.,* 30 Cal. 4th 303 (2003)........................... 11, 17-18

*Delisle v. Speedy Cash*, No. 3:18-CV-2042-GPC-RBB, 2019 WL 2423090 (S.D. Cal. June 10, 2019) ..............................................................................................*passim*

*Dornaus v. Best Buy Co.*, No. 18-CV-04085-PJH, 2019 WL 632957 (N.D. Cal. Feb. 14, 2019)............................................................................................................................21

*Eiess v. USAA Fed. Sav. Bank*, No. 19-CV-00108-EMC, 2019 WL 3997463 (N.D. Cal. Aug. 23, 2019) ...............................................................................................................24

*In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060 (C.D. Cal. 2011) ...................................................................................................17

*Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV172477JGBSPX, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ............................................................................25

*Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018)............................................................................................................................22

*Lotsoff v. Wells Fargo Bank*, N.A., No. 18-CV-02033-AJB-JLB, 2019 WL 4747667 (S.D. Cal. Sept. 30, 2019)............................................................................................21

*Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891  (N.D. Cal. 2018)...........................21

*McArdle v. AT&T Mobility LLC*, Case No. 09-cv-01117-CW, 2017 WL 4354998, (N.D. Cal. Oct. 2, 2017) ....................................................................................................10

*McGill v. Citibank*, N.A. 2 Cal. 5th 945 (2017) ...................................................*passim*

*McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 858 (S.D. Cal. 2019) ..................25

*Mejia v. Merchants Bldg. Maint., LLC*, 38 Cal. App. 5th 723 (Ct. App. 2019)......11, 18

*Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994 (N.D. Cal. 2011) ..........................17

*Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1156 (N.D. Cal. 2005) ...................... 16-17

*Roberts v. AT&T Mobility LLC*, Case No. 15-cv-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018)...............................................................................10

*Specialty Merch. Corp. v. Navigators Ins. Co.*, No. CV125702GHKAGRX, 2012 WL 12892158 (C.D. Cal. Oct. 23, 2012) ...................................................................18, 24

*Sponheim v. Citibank*, N.A., No. SACV19264JVSADSX, 2019 WL 2498938 (C.D. Cal. June 10, 2019) ...............................................................................................25

*Tourgeman v. Nelson & Kennard*, 222 Cal. App. 4th 1447, 1464 (2014)....................17

*Tribendis v. Life Care Centers of Am., Inc.*, 2014 WL 12639322 (C.D. Cal. Sept. 19, 2014)...............................................................................................................14

*Weiss v. Kuck Trucking, Inc.*, 166 F. App'x 931, 932 (9th Cir. 2006)..........................23

## Statutes

Cal. Bus. & Prof. Code § 17204 ...............................................................................13, 15

Cal. Civ. Code § 1780..................................................................................................17

Cal. Civ. Code § 3513....................................................................................................6

Cal. Civ. Proc. Code § 1021.5 ......................................................................................14

## Other Authorities

7 Am. Jur. 2d Attorneys at Law § 227.........................................................................14

"*connect*," Merriam-Webster Online Dictionary, 2019. http://www.merriam-webster.com (Nov. 14. 2010) .............................................................................19

"*Involve*," Google Dictionary, Nov. 13, 2019, available at www.google.com (ent. "define involving")........................................................................................9

William Rubenstein, *On What A "Private Attorney General" Is—and Why It Matters*, 57 Vand. L. Rev. 2129 (2004).......................................................... 11-13

*Private-Attorney General Doctrine*," Black's Law Dictionary (11th ed. 2019) ...........14

Proposition 64, 2004 Cal. Legis. Serv. Prop. 64.........................................................16

The Court should deny MoneyLion's[1] Motion to Compel Arbitration (Doc. 18) because the arbitration agreement at issue is void in its entirety. The agreement contains a "poison pill" clause which makes its entire enforceability depend on the enforceability of three specified provisions. Two of these provisions are invalid under *McGill v. Citibank*, N.A. 2 Cal. 5th 945 (2017) because they prohibit Plaintiff Marggieh DiCarlo ("Plaintiff") from seeking public injunctive relief in any forum. The combined effect of *McGill* and the poison pill clause renders the "entire Arbitration Provision," by its own terms, "null and void."

## INTRODUCTION

The case is a classic candidate for public injunctive relief because it seeks to restrain a large-scale, ongoing deception MoneyLion is perpetrating against the general public. MoneyLion promotes itself as a champion of the "financially underserved," "empowering" them to "control of their financial lives," and bringing them "financial literacy, wellbeing, and independence"—all conveniently delivered through the MoneyLion smartphone app. *See* Doc. 18 at 1. These representations and others that MoneyLion advertises to the general public are wildly inconsistent with the actual consumer experience. *See* First Amended Complaint, Doc. 17 ("FAC"), ¶ 6 (quoting consumer accounts: "'*Total nightmare*'; '*This is theft*'; '*This is UNETHICAL and DECEPTIVE*'; . . . '*This is fraud*'; '*Its a trap dont do it*'; '*Shame Shame Shame*'; . . . '*This is a scam!*'"). Plaintiff's experience was similarly disastrous.

## I.  Plaintiff's Allegations in the FAC

In July of 2018, Plaintiff borrowed $500 through what MoneyLion calls its "5.99% APR Credit Builder Loan" (the "Loan"). FAC, ¶¶ 23-24. Plaintiff hoped to improve her credit in anticipation of opening her own hair salon. *Id.* As part of the Loan transaction, MoneyLion required Plaintiff to enroll in its fee-based MoneyLion Plus program. *Id.*, ¶ 30. Sixteen months later, even after paying around $300 towards her

---

[1] Defendants, MoneyLion, Inc., MoneyLion of California, LLC, ML Plus LLC, and ML Wealth, LLC are referred to collectively as "MoneyLion."

Loan, Plaintiff supposedly owes MoneyLion $948 on a $500 Loan that supposedly carries an APR of just 5.99%. *Id.*, ¶ 91. How could this happen?

The answer lies in MoneyLion's exotic and, as Plaintiff will show, deceptive and illegal fee-based revenue model. MoneyLion offers two versions of its services: a free version called "MoneyLion Core," and a paid "members only" version of its services called "MoneyLion Plus." *Id.*, ¶¶ 60-67. Enrollment in MoneyLion Plus requires subscribers to pay a monthly membership fee of $29.00 (the "Membership Fee") and agree to automated minimum deposits of $50.00 per month into a MoneyLion managed Investment Account. *Id.*, ¶ 61.

As Plaintiff later learned, MoneyLion's treatment of the Membership Fee is foreign to any reasonable consumer's understanding of the concept. *Id.*, ¶¶ 70-77. At best, the Membership Fees are disguised interest charges, *id.*, ¶ 78; at worst, they're outright theft, *id.*, ¶¶ 75-76. And they're often impossible to stop. *Id.*, ¶¶ 88-89.

MoneyLion will not allow consumers to cancel their MoneyLion Plus membership if they have an outstanding Loan balance, something Plaintiff and others learned only *after* attempting to cancel their Plus memberships. *Id.*, ¶¶ 51, 83. If a subscriber misses a monthly Loan or Membership payment, MoneyLion will "pause" the member's MoneyLion Plus membership, which means that he or she is blocked from accessing any of the features or supposed benefits available through MoneyLion Plus. *Id.*, ¶ 71. That part is fair enough. But it gets worse. MoneyLion will still charge Membership Fees for months in which MoneyLion suspended the member's access to MoneyLion Plus benefits. *Id.*, ¶¶ 73-74. And it will not restore a member's status to "good standing" and resume her access to Plus member benefits until the cumulative sum of *all* delinquent Membership Fees are paid in full, even though MoneyLion will not—and indeed, cannot—provide "past due" membership benefits in return. *Id.*, ¶ 76.

Regaining one's status as a "member in good standing" is critical, Plaintiff later learned, because it's a second component of MoneyLion's undisclosed cancellation criteria. MoneyLion will not allow consumers to cancel their MoneyLion Plus

---

membership—not just if they have an outstanding Loan balance—but also if they owe any past-due Membership Fees. *Id.*, ¶¶ 85-86. The trap-like effect of MoneyLion's scheme is evident: a consumer who cannot stay current on her Loan or Membership Fees likely cannot muster the lump sum payment required to satisfy her entire Loan balance and all past-due Membership Fees. *Id.*, ¶ 76. She therefore cannot cancel her Plus membership. So MoneyLion's continued extraction of Membership Fees from consumers' bank accounts continues month after month, with no end in sight. *Id.*, ¶ 113.

And *that* is how Plaintiff owes more than $1,000 on a $500, 5.99% APR Loan she took out just 15 months ago.

## II. Plaintiff's FAC Brings Claims for Private Relief and, Separately, for Public Injunctive Relief

Plaintiff's seven claims for relief generally fall into two categories. In four of her claims, Plaintiff seeks damages, private injunctive relief, and/or restitution on behalf of herself and a class of MoneyLion Plus subscribers for violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count I); California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (Count III); California's Anti-Usury Laws, Cal. Const. art. XV, § 1 and Cal. Civ. Code § 1916-2 (Count V); and the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* (Count VI). But Plaintiff's requested relief is not confined to herself and the class of already-harmed MoneyLion customers. Her remaining three claims—Count II, Count IV, and Count VII—solely seek public injunctive relief under the UCL, CLRA, and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

## III. MoneyLion's Arbitration Agreement and Its Limitations on Non-Individual Relief

As a condition to enrolling in MoneyLion Plus and again upon obtaining the Loan, MoneyLion required Plaintiff to sign its "Agreements for Resolving Disputes." *See* Ex. D to FAC (Doc. 17-4) (the "Arbitration Agreement" or "Agreement"). Three features of the Agreement are the most relevant here: Section 5's restrictions on non-individual relief; Section 10's "Poison Pill" clause; and Sections 9's non-delegation clause.

---

*First*, the Agreement endeavors at every turn to limit the scope of available relief to that which is necessary to resolve disputes on an individual basis. These restrictions primarily appear in Section 5, titled "No Class Actions or Similar Proceedings; Special Features of Arbitration," but this intent is reflected throughout the Agreement.[2]

Section 5(C) serves this intent by prohibiting mass joinder of claims through the class action device. But the Agreement doesn't stop there. It further prohibits, at Section 5(E), *any* joinder or consolidation of Plaintiff's claims with the claims of "any other person." Even a simple, two-claimant arbitration proceeding is disallowed under Section 5(E). And Section 5(E)'s anti-joinder provision is exceptionally broad: a claim is prohibited—not just if it *belongs to* any other person—but if it so much as "*involv[es]* any other person." *Id.* § 5(E) (emphasis added).

What about claims seeking broad relief to vindicate public rights? Such claims may not require formal joinder of parties though simple or class action mechanisms. Yet, to effectuate their public purposes, statutes creating these rights often entitle plaintiffs to relief broader in scope than what's strictly necessary for private redress. A business endeavoring to craft a consumer arbitration agreement that strictly limits claimants to individual relief might worry, then, that its class action and joinder prohibitions don't cover this class of claims. So to be safe, that business might include a third category specifically to prohibit such claims.

Which is exactly what MoneyLion did here. Section 5(D) specifically labels—and prohibits—this class of claims by mandating that "neither you nor we will have the right to: . . . act as *a private attorney general* in court or in arbitration." *Id.*, ¶ 5(D)

---

[2] For example, the claims exempted from arbitration are those where the scope of available relief is limited: an "individual action brought . . . in small claims court" (so long as the claims remain in small claims court) or an "individual action . . . to prevent the other party from using any self-help remedy." *Id.* at 1, ¶ 4. Also, MoneyLion may opt to litigate a "lawsuit on an individual basis" in court, but it can change its mind and elect arbitration if the plaintiff later "assert[s] the Claim on a class, representative or multi-party basis." *Id.*, § 2.

---

(emphasis added).  As explained below, a party acts as a private attorney general when she seeks relief vindicating a mix of private and public interests in an adjudicative proceeding.  *See infra* at 11-13. Section 5(D) thus completes the Agreement's comprehensive exclusion of non-individual relief:  in addition to prohibiting relief for (or "involving") class members, co-parties, and nonparties, the Agreement also prohibits relief oriented to serve the interests of the public.

*Second*, MoneyLion must view Section 5's prohibitions on consumers bringing a "class action," acting as a "private attorney general," and joining claims "involving any other person" as indispensable components of its arbitration scheme.  Rather than designate these provisions severable if any are deemed unenforceable, Section 10—the "Poison Pill" clause—instead provides that the enforceability of the *entire Agreement* depends on the enforceability of Sections 5(C)-(E): "if Section 5(C), (D) and/or (E) is declared invalid in a proceeding between you and us . . . *this entire Arbitration Provision (other than this sentence) shall be null and void in such proceeding . . . .*"  *Id.*, § 10 (the "Poison Pill" clause) (emphasis added).

*Third*, the Arbitration Clause leaves no doubt that questions regarding the validity or effect of Section 5's private attorney general and joinder restrictions and Section 10's Poison Pill clause "are for a court and not an arbitrator to decide."  *Id.* at 1, ¶ 4.

## IV.   The Nature of Public Injunctive Relief and the *McGill* Rule

MoneyLion correctly anticipates that the enforceability of its Arbitration Agreement depends on whether it runs afoul of the *McGill* rule.  The UCL, CLRA, and FAL each make available the remedy of a "public injunction." *McGill*, 2 Cal. 5th at 954-55. The California Supreme Court has defined "public injunctive relief" as "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."  *Id*. at 951.  Whether injunctive relief is "public" or "private" depends on the primary beneficiary of the relief. Private injunctive relief "'resolves a private dispute'" between the parties and "'rectifies individual wrongs,'" even if it benefits the general public incidentally.  *Id.* at 955 (quoting *Broughton v. Cigna*

*Healthplans of Cal.*, 21 Cal. 4th 1066, 1080 (1999) (internal alterations omitted).   A public injunction, by contrast, accomplishes the reverse:  it "'by and large' benefits the general public" and "benefits the plaintiff, 'if at all,' only 'incidentally' and/or as 'a member of the general public.'" *Id.* (quoting *Broughton*, 21 Cal. 4th at 1079-80).

The quintessential public injunction is one that restrains "a deceptive business practice."  *Id*.  Such relief "'generally benefits' the public 'directly by the elimination of deceptive practices' and 'will . . . not benefit' the plaintiff 'directly,' because the plaintiff has "already been injured, allegedly, by such practices and [is therefore] aware of them."'  *Id*. (quoting *Broughton*, 21 Cal. 4th at 1080 at n.5).

In *McGill*, the California Supreme Court held that an agreement which waives the right to seek public injunctive relief in any forum violates California Civil Code § 3513. *Id.* at 962. Section 3513 provides that "[a] law established for a public reason cannot be contravened by a private agreement."   *McGill* determined that public injunctive relief available under the UCL, CLRA, and FAL "[b]y definition," exists "primarily for the benefit of the general public." *Id*. at 961 (internal quotations omitted).   The court's analysis yielded what has become known as the "*McGill* rule": an "arbitration provision [that] purports to waive" a plaintiff's right to "request in any forum such public injunctive relief . . . is invalid and enforceable under California law." *Id*.

## **ARGUMENT**

Here, the Court should conclude that *McGill* applies, triggers the Poison Pill clause, and invalidates the Arbitration Agreement in its entirety.  Two Poison Pill-linked clauses independently prohibit Plaintiff from seeking public injunctive relief in any forum:  Section 5(D), which prohibits "act[ing] as a private attorney general in court or in arbitration," and Section 5(E), which prohibits "join[ing] or consolidate[ing] claim(s) involving you with claims involving any other person."  *See* Agreement, § 5(D), (E).

MoneyLion's arguments to the contrary are not persuasive.  First, its argument that Section 5(D) does not prohibit public injunctive relief is contrary to any plausible characterization of what it means to "act as a private attorney general," including the

California Supreme Court's.  It also ignores Section 5(E)'s anti-joinder provision as an independent prohibition on public injunctive relief.  Second, MoneyLion's argument that public injunctions are permitted under the Agreement's generic "all remedies" clause mischaracterizes *McGill* and, in any event, rests on a construction of the Agreement that would render Section 5's key prohibitions meaningless. And, third, MoneyLion's argument that Plaintiff does not really seek public injunctive relies on a contrived "primary purpose" standard which contravenes California law and federal pleading rules.

## I.   The Southern District of California Already Found the Same Arbitration Agreement Unenforceable Under *McGill*

MoneyLion's same arguments have already been raised in connection with the *same* arbitration agreement.  They were rejected.  Just this past summer, Judge Curiel in the Southern District of California evaluated a virtually-identical arbitration clause— one seemingly drafted from the same template as MoneyLion's—for compliance with *McGill*.  *See Delisle v. Speedy Cash*, No. 3:18-CV-2042-GPC-RBB, 2019 WL 2423090 (S.D. Cal. June 10, 2019); Speedy Cash Arb. Clause (attached as <u>Exhibit A</u> to the concurrently-filed Declaration of Kolin C. Tang ("Tang Decl.")). Judge Curiel's analysis correctly resolves each issue MoneyLion has raised. The Court should apply it here.

### A. Speedy Cash Could Not Credibly Dispute That Section 5 Prohibits Public Injunctive Relief

The arbitration agreement in *Speedy Cash* is virtually identical to MoneyLion's.  *See* <u>Exhibit B</u>, Tang Decl. (comparing the two in redline).  Most importantly, the two arbitration agreements contain identical Sections 5(D) and 5(E), an identical "poison pill" clause, and the same "all remedies" provision MoneyLion contends rescues its Arbitration Agreement from *McGill* here.  *See* 2019 WL 2423090, at *7 n.1; Ex. B, §§ 5, 9, 10.

It was obvious, at least to the parties in *Speedy Cash*, that Section 5 prohibited public injunctive relief in any forum.  *Id.*  Their only disagreement was about the precise source of the prohibition.  *Id.* For Speedy Cash, it was clear that Section 5(E)'s

prohibition on "join[ing] or consolidat[ing] claim(s) involving you with claims involving any other person" disallowed public injunctive relief because "a claim for broad public injunctive relief would require adjudication of countless agreements Speedy Cash has executed with third parties." *See* Reply ISO Motion to Compel Arbitration, Doc. 21, Case No. 3:18-CV-2042-GPC-RBB (S.D. Cal.), at 10 n.12. The plaintiffs "locate[d] the waiver of public injunctive relief in Section 5(D)," which "disallows Plaintiffs from 'act[ing] as a private attorney general in court or in arbitration." 2019 WL 2423090, at *7. Judge Curiel, for his part, agreed with the parties' interpretation.

## B. Speedy Cash's Identical "All Remedies" Clause Confirmed, Not Avoided, *McGill*'s Application

Significantly, Judge Curiel viewed the language of the "all remedies" clause—the very one MoneyLion here claims to authorize public injunctive relief—as confirming, not weakening, the conclusion that the arbitration clause prohibits public injunctive relief in any forum. *See id.* at *7 n.1 ("Indeed, section 9 confirms that any arbitrator . . . 'shall be authorized to award all remedies available in an *individual lawsuit*.'").

## C. Speedy Cash's Claim That the Plaintiffs Actually Sought Private Relief Was "Unwinning"; MoneyLion's is Even Less Persuasive

Finally, like MoneyLion, Speedy Cash argued that the "[p]laintiffs seek to obtain 'public injunctive relief' in name only," not in substance. *Id.* at *7. Judge Curiel found this argument "unwinning, because the relief Plaintiffs seek falls squarely within the ambit of public injunctive relief." *Id.* "[I]t is hard to see how Plaintiffs' requested injunction would benefit them directly," Judge Curiel reasoned, "since they have already been injured, allegedly, by [the Defendant's] practices and is aware of them." *Id.* (internal quotation omitted). And "[t]he fact that Plaintiffs would receive incidental benefit from the requested injunction is of no moment," because "[t]o have standing to raise a claim of public injunctive relief under the UCL in the first place, Plaintiffs [must have] 'lost money or property as a result of the unfair competition.'" *Id.* (quoting Cal.

---

Bus. & Prof. C. § 17204). "Thus, it is natural, if not almost inevitable, that . . . public injunctive relief . . . would have the ancillary effect of benefiting a UCL plaintiff." *Id.*

In rejecting Speedy Cash's argument, the court emphasized the following aspects of the plaintiffs' public injunction claims: the plaintiffs sought "injunctive relief pursuant to the UCL and the CLRA," "allege[d] that Speedy Cash" engages in practices "harmful to the California consumer public," and requested an injunction restraining the unlawful conduct and mandating "corrective advertising." *Id.* These characteristics exist equally, if not to a greater extent, in Plaintiff's FAC. *See* FAC, ¶¶ 134-36, 145-47, 169-70, 190-95. The Court should follow Judge Curiel's analysis in *Speedy Cash* here.

## II. The Court Can Conclude that the Arbitration Agreement Is Invalid Under *McGill* Without Reference to *Speedy Cash*

If the Court is disinclined to decide this Motion solely based on *Speedy Cash*, it can reach the same result under an independent analysis. Section 5(D)'s prohibition on Plaintiff "act[ing] as a private attorney general in court or in arbitration" and Section 5(E)'s prohibition on Plaintiff "join[ing] or consolidat[ing] claim(s) involving you with claims involving any other person" each preclude Plaintiff from seeking public injunctive relief in any forum, violate *McGill*, and trigger the Poison Pill clause.

### A. Section 5(E) Prohibits Public Injunctive Relief Because Such Relief Necessarily Requires "Joining or Consolidating" Individual Claims with Claims "Involving" Others

Plaintiff addresses Section 5(E)'s broad anti-joinder provision first. Notably, Section 5(E) does not merely prohibit the inclusion of claims "belonging" to another person or raised "on behalf" of another person—it broadly applies to "claims *involving* any other person." To involve something means to "include (something) as a necessary part or result." *See* "*Involve*," Google Dictionary, Nov. 13, 2019, available at www.google.com (ent. "define involving"). Thus, Section 5(E) prohibits more than the joinder of other parties' claims. It equally prohibits the assertion of an individual claim for which the "inclusion of any other person" is a necessary part.

---

A claim for public injunctive relief necessarily involves "other person[s]."  The very definition of public injunctive relief requires that "other person[s]"—namely, other persons comprising the general public—be the primary beneficiaries of the relief. *McGill*, 2 Cal. 5th at 954-55.  For this reason, courts have consistently found similar anti-joinder provisions in arbitration agreements to prohibit public injunctive relief and therefore violate *McGill*.  *See, e.g.*, *Blair v. Rent-A-Ctr., Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *5 (N.D. Cal. Oct. 25, 2017) (noting that "the arbitrator was prohibited from 'award[ing] relief that would affect RAC account holders other than [the customer]'"), *aff'd*, 928 F.3d 819 (9th Cir. 2019); *Roberts v. AT&T Mobility LLC*, Case No. 15-cv-03418-EMC, 2018 WL 1317346, at *4 (N.D. Cal. Mar. 14, 2018) (the arbitrator was prohibited from awarding relief for or against anyone who was "not a party" to arbitration); *McArdle v. AT&T Mobility LLC*, Case No. 09-cv-01117-CW, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) ("The arbitrator [could] award declaratory or injunctive relief only in favor of the individual party seeking relief.").

A claim for public injunctive relief is a claim that necessarily "involve[es]" other people. Because Section 5(E) prohibits such claims, it is invalid under *McGill*.

## B. Section 5(D)'s Prohibition on "Acting as a Private Attorney General" Separately Bars Claims for Public Injunctive Relief

Section 5(D) also runs afoul of *McGill* because a party "acts as a private attorney general" when it seeks public injunctive relief under the UCL, CLRA, or FAL.

MoneyLion anticipates this argument in its Motion, but its arguments are unpersuasive.  Notably, MoneyLion makes no attempt to define what it means to "act as a private attorney general"—even though it was MoneyLion that chose to prohibit such action in its Arbitration Agreement.  Instead, MoneyLion asks the Court to summarily conclude that "act[ing] as a private attorney general"—whatever the phrase might mean—does not include pursuing a claim for public injunctive relief.  But Section 5(D)'s prohibition *must mean something*.  As explained below, public injunctive relief is disallowed under any reasonable interpretation of the clause.

1.  <u>The California Supreme Court Has Consistently Characterized Public Injunctive Relief as a "Private Attorney General" Action</u>

The California Supreme Court has already answered the question of whether a party "acts as a private attorney general" when it seeks a public injunction—and it answered in the affirmative.  In *Broughton*, the court noted that, when seeking a public injunction, "[t]he CLRA plaintiff . . . is functioning as a private attorney general, enjoining future deceptive practices on behalf of the general public." 21 Cal. 4th at 1079-80 (emphasis added).  Four years later, in *Cruz v. PacifiCare Health Systems, Inc.*, the court stated that "in a public injunction action a plaintiff acts in the purest sense as a private attorney general."  30 Cal. 4th 303, 312 (2003).  The court's characterization is emphatic: a plaintiff seeking public injunctive relief acts as private attorney general—not in some metaphorical or abstract sense—but "in the *purest sense*" as "a *bona fide* private attorney general." *Id.*; *Broughton*, 21 Cal. 4th at 1080 (emphasis added).

*Broughton* and *Cruz*'s characterization of public injunctive relief remains good law.  *McGill*, decided in 2017, spends a paragraph summarizing *Broughton* and *Cruz* and generally adopts the same characterization of the remedy as those prior decisions (though not quoting the words "private attorney general" explicitly).  *See* 2 Cal. 5th 955.  As recently as August of this year, a California appeals court confirmed the private attorney general character of public injunctive relief.  *See Mejia v. Merchants Bldg. Maint., LLC*, 38 Cal. App. 5th 723, 739 (Ct. App. 2019) (referencing "a 'public injunction' sought by the individual plaintiff 'acting in the purest sense as a private attorney general'"), *disapproved on other grounds*, *ZB, N.A. v. Superior Court of San Diego Cty.*, 8 Cal. 5th 175, 448 P.3d 239 (2019).

2.  <u>Characterizing a Public Injunction Claim as a Private Attorney General Action Comports with the Term's Usage in American Law</u>

One legal commentator has authored a helpful analysis on this very question.  In his 2004 article, *On What A "Private Attorney General" Is—and Why It Matters*, then-UCLA law professor William Rubenstein traces the evolution of the private attorney general concept from its first appearance in American law to its various modern usages.

57 Vand. L. Rev. 2129 (2004) (Exhibit C, Tang Decl.).  Although the concept "proves surprisingly mercurial" and "elusive," one pattern does emerge:  the term "private attorney general is a placeholder for any person who mixes public and private features in the adjudicative arena." *Id.* at 2129-30. Professor Rubenstein concludes that the private attorney general can be distilled to three forms:

(1) the "**substitute attorney general**" or *qui tam* relator, in which the claim at issue belongs to the government but a private party acting as realtor litigates the claim on its behalf, usually when the attorney general declines to prosecute it herself, *id.* at 2114 (*e.g.*, the False Claims Act, 31 U.S.C. §§ 3729-3733);

(2) the "**supplemental attorney general**," where a plaintiff "pursues her own injury in fact," though her individual interest is "modest compared to the breadth of the statutory provisions she derivatively enforces," *id.* at 2146-47 (*e.g.*, federal environmental laws conferring citizen enforcement standing or, in Plaintiff's opinion, public injunctive relief under the UCL, CLRA, or FAL); and

(3) the "**simulated attorney general**," where a single plaintiff "secures a fund that will benefit an entire group of individuals, even if the case was not prosecuted on behalf of the whole group or as a representative action," *id.* at 2154-55 (*e.g.*, in a shareholder derivative case, where costs of the action are spread "among all of the benefiting shareholders taxing fees against the defendant corporation," *id.* (citing *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 394 (1970)).

The interest at stake in any proceeding is seldom purely private or purely public; generally, it will comprise some mix of the two interests.  Professor Rubenstein's article visually maps this spectrum, which Plaintiff has reproduced and annotated on the following page:

*See id.* at 2156 (red and green annotations added).  A claim's location on this matrix depends in varying degrees on the nature of the client (individual or governmental), the attorney's compensation (hourly, lodestar, or contingent), and whether the relief primarily seeks compensation or deterrence.  *See id.* at 2156-58.

Although Rubenstein's analysis does not consider California's unique public injunction specifically, the remedy likely would fall within the area shaded in red.  *First*, a public injunction under the UCL, CLRA, or FAL is a "supplemental" attorney general action.  A plaintiff must have sustained her "own injury in fact" to have standing to seek a public injunction, though her own interests are modest compared to the public's interest in the "statutory provisions she derivatively enforces."  *Compare id.* at 2146-47 with *McGill*, 2 Cal. 5th at 958.  *Second*, standing for injured citizens to seek public injunctions "supplements" enforcement authority otherwise vested in the "Attorney General," "a district attorney," "city attorney" and other public enforcement officials (at least the case of the UCL and FAL).  *See* Cal. Bus. & Prof. Code § 17204.  And, *third*, within the "supplemental" category, public injunctions fall toward the category's more public end because they can only achieve deterrence, not compensation.  *See Broughton*, 21 Cal. 4th at 1077 (concluding, for this reason, that the private attorney character of a public injunction action is stronger than an antitrust lawsuit).  In any event, public

injunctions plainly fall somewhere within the broader universe of claims recognized as "private attorney general" actions in American law (*i.e.*, the region shaded in green).

It was MoneyLion that chose to include a vague, "mercurial," and "elusive" prohibition in its Arbitration Agreement—one that implicates a broad range of rights and remedies for tens of thousands of California consumers. The Court should not permit MoneyLion to arbitrarily limit the concept to suit its immediate litigation objectives. Wherever the precise boundaries of the private attorney general concept lie, the Court should conclude that public injunctive relief falls squarely within them and, thus, is prohibited under Section 5(D).

3. The Private Attorney General Fee Doctrine Further Supports Characterizing a Public Injunction as a Private Attorney General Action

The availability of attorneys' fees under the private attorney general doctrine for a litigant who obtains a public injunction further confirms the private attorney general character of the remedy. The "private-attorney general doctrine" refers to "[t]he equitable principle that allows the recovery of attorney's fees to a party who brings a lawsuit that benefits a significant number of people, requires private enforcement, and is important to society as a whole." *Private-Attorney General Doctrine*," Black's Law Dictionary (11th ed. 2019); *see also* 7 Am. Jur. 2d Attorneys at Law § 227.

California has codified the private attorney general doctrine at Cal. Civ. Proc. Code § 1021.5. Tellingly, "if a plaintiff prevails in a UCL claim, it may seek attorney's fees under . . . section 1021.5." *Tribendis v. Life Care Centers of Am., Inc.*, 2014 WL 12639322, at *10 (C.D. Cal. Sept. 19, 2014). And the criteria for fees under California's private attorney general doctrine mirrors the criteria that render an injunction a "public" one under *McGill*. *Compare* 2 Cal. 5th at 961 *with* Cal. Civ. Proc. Code § 1021.5.

4. MoneyLion's Claim that a Public Injunction is Not a Private Attorney General Action Mischaracterizes *McGill* and Proposition 64

MoneyLion asserts that Section 5(D)'s prohibition on private attorney general actions does not prohibit Plaintiff from seeking public injunctive relief. This is true, according to MoneyLion, because *McGill* holds that "there is no requirement that [public

---

injunction claims] be brought as a class action or by an individual acting as a private attorney general." Doc. 18 at 10.  MoneyLion repeats some version of this claim several times in its Motion.  *See id.* at 10-13.  While the claim is true for class actions, *McGill* says absolutely nothing about public injunction plaintiffs not acting as private attorneys general.  MoneyLion misquotes the opinion to make it seem to.

### i. *Proposition 64 Did Not Alter the Private Attorney General Character of Public Injunctions*

MoneyLion constructs this argument from *McGill*'s discussion of Proposition 64's amendments to the UCL in 2004.  *See* Doc. 18, pp. 10-11.  MoneyLion correctly notes that before Proposition 64, the UCL authorized "any person acting for the interest of . . . the general public" to bring an action for public injunctive relief—even persons unaffected by the conduct at issue.  *Id.* at 10.  MoneyLion also accurately describes Proposition 64's amendment to the UCL's once limitless standing rule, which confined the universe of plaintiffs eligible to seek an injunction to those who "have 'suffered injury in fact and [have] lost money or property as a result of' a violation." *McGill*, 2 Cal. 5th at 958 (quoting Cal. Bus. & Prof. Code, §§ 17204, 17535).  But the conclusion MoneyLion draws from this statutory history—the idea that, after Proposition 64, a plaintiff no longer sues as a "private attorney general" when she seeks public injunctive relief under the UCL—is simply incorrect.

Appearing to quote *McGill*, MoneyLion asserts that, before Proposition 64, UCL "actions, by uninjured individuals, were referred to as actions by '*private attorneys general*[,]'" and that "Proposition 64 . . . ended the practice of actions by '*private attorneys general*.'"  Doc. 18 at 11 (appearing to quote *McGill*, 2 Cal. 5th at 958-59 (emphasis added)).  This history, if true, would suggest that Proposition 64 abolished the private attorney general character of public injunctions under the UCL.  But it did not.

To be clear:  the phrase "private attorneys general" appears nowhere in *McGill*'s discussions of Proposition 64.  *See McGill*, 2 Cal. 5th at 958-60.  As *McGill* explained,

---

"Proposition 64 identified the 'filing of lawsuits' by *private attorneys*"—not *private attorneys general*—"as a misuse of the unfair competition laws." *Id.* at 952 (emphasis added).[3]  MoneyLion's argument glibly conflates "private attorneys" and "private attorney[s] general."  The two constituencies share similar-sounding names, but no other similarities relevant here.

The text of Proposition 64 itself confirms as much. The measure's principal stated purpose was to address the conduct of "some private attorneys" who, by virtue of the UCL's then-unlimited standing provision, could "[f]ile lawsuits where no client has been injured" and "for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." Proposition 64, 2004 Cal. Legis. Serv. Prop. 64, § 1(a) (Exhibit D, Tang Decl.). The phrase "private attorney(s) general" also does not appear anywhere in Proposition 64's Declaration of Purpose or operative text.  *See id.*

In short, nothing in Proposition 64 itself or *McGill*'s discussion of it suggests that the measure abolished the private attorney general character of public injunctions under the UCL.

> ### ii.   *Nor Was the Limitless Standing Provision of The Pre-Proposition 64 UCL the Source Its Private Attorney General Character*

A more forthright version of this argument might assert that limitless standing under the pre-Proposition 64 UCL was essential to its private attorney general character; thus, with its repeal, so too went away the private attorney general character of UCL public injunctions.  To be fair, at least one court has characterized Proposition 64 as "enact[ing] at least a limited repeal of 'private attorney general' *standing* within the

---

[3] Indeed, the phase "private attorney general" appears just once in *McGill* and, significantly, does so only when the court quotes the provisions of Citibank's arbitration clause that operated to prohibit the plaintiff from seeking public injunctive relief under the UCL.  *Id*. at 952 ("neither you, we, nor any other person may pursue the Claim in arbitration as a class action, *private attorney general* action or other representative action" (emphasis added)).

UCL." *Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1156 (N.D. Cal. 2005) (emphasis added). But the argument that the UCL's pre-Proposition 64 universal standing provision was the source of the private attorney general character of public injunctive relief fails as well.

*First*, *Palmer* itself cannot support such a conclusion. It described Proposition 64 as a "limited repeal" of private attorney general standing. *Id.* This suggests that some private attorney general standing still exists, presumably for individuals who, like Plaintiff, have suffered their own injury in fact.

*Second*, the argument that standing for uninjured strangers is an essential ingredient of a private attorney general action cannot be reconciled with courts' continued characterization of UCL public injunctions as private attorney general actions well after Proposition 64's amendments. *Cf. McGill*, 2 Cal. 5th 955 (adopting *Broughton* and *Cruz*'s characterization of public injunctive relief); *see also Tourgeman v. Nelson & Kennard*, 222 Cal. App. 4th 1447, 1464 (2014) ("[o]ur Legislature also has authorized private attorney general actions with respect to the enforcement of the UCL"); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1006 (N.D. Cal. 2011) (referencing "claims brought in the capacity of a private attorney general that seek a public injunction"); *In re DirecTV*, 810 F. Supp. 2d 1060, 1073 (C.D. Cal. 2011) (same), *rev'd on other grounds sub nom.*, *Lombardi v. DirecTV, Inc.*, 546 F. App'x 715 (9th Cir. 2013).

*Third*, such a conclusion cannot be reconciled with California courts' consistent characterization of public injunctions under the CLRA as private attorney general actions. The CLRA, unlike the UCL, was unaffected by Proposition 64 and never conferred standing to uninjured individuals (since the 1970's, it has limited standing to consumers who "suffer[] any damage as a result of [a violation]"). *See* Cal. Civ. Code § 1780(a); 1988 Cal. Legis. Serv. 823. An individual who has suffered damage, according to California courts, nevertheless acts as a "private attorney general in the purest sense" when she seeks a public injunction under the CLRA. *Cruz*, 30 Cal. 4th

303, 312; *Specialty Merch. Corp. v. Navigators Ins. Co.*, , 2012 WL 12892158, at *8 (C.D. Cal. Oct. 23, 2012) (same); *Mejia*, 38 Cal. App. 5th at 739 (same).[4]

### III.   MoneyLion's Argument Under the "All Remedies" Cannot Rescue Its Arbitration Agreement from *McGill*

MoneyLion next argues that the Arbitration Agreement does, in fact, permit an arbitrator to award public injunctive relief. According to MoneyLion, the "all remedies" clause in Section 9 of the Agreement supplies this authorization when it provides: "[t]he arbitrator shall . . . be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including, without limitation . . . injunctive and other equitable relief." Agreement, § 9. The agreement authorizes "all remedies available in an individual lawsuit"; a public injunction is a remedy available in an individual lawsuit; and so, MoneyLion's argument goes, the arbitration clause does not prohibit public injunctive relief.

This too is wrong. The fact that individuals have standing to seek a public injunction does not transform public injunctive relief into an individual remedy. And it especially does not mean that a proceeding involving a public injunction claim could reasonably be characterized as an "individual lawsuit," especially when that term must be construed in the context of an arbitration agreement that, at every turn, endeavors to limit the scope of available relief to that which is necessary to resolve the dispute between the parties.

### A. MoneyLion's Argument Confuses Individual Standing and Individual Relief

MoneyLion's argument relies on the following passage from *McGill*:

We conclude that these provisions do not preclude a private individual who has 'suffered injury in fact and has lost money or property as a result of' a violation of the UCL or the false advertising law . . . from requesting public

---

[4] Such a narrow definition would compel the bizarre conclusion that claims under California's Private Attorneys General Act ("PAGA") are not "private attorney general actions" either because PAGA standing is confined to "aggrieved employees." *See* Cal. Lab. Code § 2699(c).

injunctive relief in connection with that action. A person who meets these requirements is 'filing' the 'lawsuit' or 'action' on his or her own behalf, not 'on behalf of the general public.'

2 Cal. 5th at 959 (internal quotations omitted).  But MoneyLion infers too much from this passage.  Here, the California Supreme Court is merely explaining why a plaintiff "who has suffered injury in fact" does not need to act in a representative capacity "on behalf of the general public" to seek public injunctive relief under the UCL.  *Id.*  The discussion is about UCL standing for injured individuals, not about the individual nature of a claim for public injunctive relief:  a UCL plaintiff's own injury in fact gives her standing to sue on her own behalf for her individual injury, and she may seek public injunctive relief "in connection with that action." *Id.*

*McGill*'s description of a public injunction as a claim a plaintiff may pursue "in connection" with her individual claims is instructive.  "[T]o connect" means "to become joined." *See* "*connect*," Merriam-Webster Online Dictionary, 2019. http://www.merriam-webster.com (Nov. 14. 2010).  Although the UCL's *standing* requirements for seeking public and private relief are the same, it is doubtful that such a proceeding can be characterized as an "individual lawsuit" once an injured individual joins a claim for relief oriented to the general public with it.

## B. MoneyLion's "All Remedies" Argument Separately Fails as a Matter of Contract Construction

This argument also fails because the meaning of the term "individual lawsuit" in Section 9 must be construed in its appropriate context. Here, that context is an Arbitration Agreement that plainly seeks to limit the scope of available relief to that which is only necessary to resolve the individual dispute between the parties. Indeed, construing the arbitration clause to authorize public injunctive relief based on the "all remedies" clause would require the Court to simply ignore Sections 5(D) and 5(E). Doing so would violate a principal rule of contract interpretation. *See, e.g.*, *Burdon Cent. Sugar Refining Co. v. Payne*, 167 U.S. 127, 142 (1897) ("the contract must be so construed as to give meaning to all its provisions, and that interpretation would be

incorrect which would obliterate one portion of the contract in order to enforce another part thereof"); *Cf. Speedy Cash*, 2019 WL 2423090, at *7 n.1 (reading an identical "all remedies" clause to confirm the unavailability of public injunctive relief based on its limitation to "individual lawsuit[s]").

The case law supports this point.  Courts reviewing arbitration clauses that either prohibit acting as a private attorney general or prohibit claims or relief involving nonparties (or both) generally find that such clauses bar public injunctive relief.  Contrary to MoneyLion's argument, this is true notwithstanding the existence of separate clauses in the arbitration agreement generally purporting to authorize the arbitrator to award all remedies available under applicable law.

One such example, *Speedy Cash*, is discussed above. *See* 2019 WL 2423090, at *7 n.1.

*McGill* is another example.  In *McGill*, Citibank's arbitration clause authorized the arbitrator to award "any damages and other relief provided for under applicable law." *See* Citibank's Arb. Clause (<u>Exhibit E</u> (Ex. 3), Tang Decl.) at 1.  But it also prohibited the plaintiff from pursuing claims "as a . . . private attorney general" and the arbitrator from "award[ing] relief for or against anyone who is not a party." 2 Cal. 5th at 952. The parties agreed that these clauses "preclude[d] . . . public injunctive relief in any forum"— Citibank did not even bother to argue otherwise.  *See id.* at 956.

Similarly, the arbitration agreement in *Blair v. Rent-A-Center, Inc.*—the Ninth Circuit's recent decision affirming the validity of the *McGill* rule against FAA preemption—prohibited "the arbitrator from awarding 'relief that would affect RAC account holders other than you,' and eliminate[d] any 'right or authority for any dispute to be brought, heard, or arbitrated as a . . . private attorney general [action].'" 928 F.3d 819, 831 (9th Cir. 2019).  Rent-A-Center's arbitration clause also contained an "all remedies clause," permitting "the Arbitrator [to] award any party any remedy . . . under applicable law (including without limitation, legal, equitable and injunctive relief)." *See* Rent-A-Center Arb. Clause (<u>Exhibit F</u>, Tang Decl.), § F, ¶ 4.   The Ninth Circuit

nevertheless concluded that the arbitration clause "waive[d] [the plaintiff's] right to seek a public injunction 'in any forum.'" 928 F.3d at 831.  The presence of an "all remedies" clause did not rescue the arbitration clause from *McGill*.

Other examples abound.  *See, e.g.*, *Dornaus v. Best Buy Co.*, No. 18-CV-04085-PJH, 2019 WL 632957, at *2 (N.D. Cal. Feb. 14, 2019) (*McGill* applied notwithstanding clause permitting "all remedies [on an individual basis]" where the arbitration clause barred "remedies sought as part of a class action, private attorney general or other representative action"); *Lotsoff v. Wells Fargo Bank*, N.A., No. 18-CV-02033-AJB-JLB, 2019 WL 4747667, at *2 (S.D. Cal. Sept. 30, 2019) (same).

By contrast, in the three cases MoneyLion cites to support the argument that similar "all remedies" clauses comply with *McGill*—*Rivera*, *Magana*, and *Lee*—none of the arbitration clauses at issue prohibited the plaintiff from "act[ing] as a private attorney general" or joining "claims involving others," like MoneyLion's does here.

In *Rivera v. Uniqlo California LLC*, Judge Kronstadt of this district concluded that Uniqlo's arbitration clause did not run afoul of *McGill* because Paragraph 10 of Uniqlo's arbitration clause "permit[s] the arbitrator to 'award any remedy to which a party is entitled under applicable law.'" *See* No. 17-cv-02848-JAK-JPRX, 2017 WL 6539016, at *15 (C.D. Cal. Sept. 8, 2017) (citing Uniqlo's Arbitration Clause, ECF Doc. 12-2 (Exhibit G to Tang Decl.) at 7, ¶ 10).  But Uniqlo's agreement only prohibited "class and collective actions." *See* Ex. G at 6, ¶ 6. Unlike MoneyLion's Agreement, it did not also prohibit "act[ing] as a private attorney general" or bringing "claims involving others." *Compare* Agreement, § 5(D)-(E).

Similarly, the arbitration agreement in *Magana v. DoorDash, Inc.* provided that "the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law."  343 F. Supp. 3d 891, 901 (N.D. Cal. 2018).  But DoorDash's arbitration clause only barred the plaintiff from bringing "a class action, collective action and/or representative action"—not bringing claims involving others or acting as a private attorney general. *Id*. at 895-96.

---

The same is true of *Lee v. Postmates Inc*., No. 18-CV-03421-JCS, 2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) (subsequent history omitted).  The arbitrator could "award all remedies . . . available in a court of law." *Id*. at *9.  But the agreement only prohibited "class and/or collective action[s]" or "representative action[s]," *id*. at *1, not "act[ing] as a private attorney general" or bringing "claims involving others."

## IV.   **Plaintiff Has Adequately Pleaded Claims for Public Injunctive Relief**

Last, MoneyLion asserts that Plaintiff is not really seeking a public injunction, but rather, a private one, and so *McGill* does not apply.  According to MoneyLion, the relief Plaintiff seeks is not truly public injunctive relief because the "primary focus" of Plaintiff's FAC is money damages, and her requests for public injunctive relief are just "vague and generalized."  The Court should reject these arguments as well.

### A. **MoneyLion's Contrived "Primary Purpose" Test for Public Injunction Pleadings Is Contrary to California Law and Federal Pleading Rules**

MoneyLion argues that the Court should characterize Plaintiff's requested relief as a private because "the primary focus of Plaintiff's FAC is . . . monetary damages, which are sought on behalf of Plaintiff and a putative class of California residents." Doc. 18, at 16.  The implication here is that claims for private relief cannot coexist in the same pleading alongside claims for public injunctive relief without dissipating the public character of the latter. This argument is inconsistent with California law and federal pleading rules.

It is no secret that, *on some of her claims* in the FAC, Plaintiff seeks relief that is largely private in nature.   But three other claims—specifically Count II (public injunctions under the UCL), Count III (public injunctions under the CLRA), and Count VII (public injunctions under the FAL)—seek relief oriented to the public at large only.

Nothing in *McGill* or the cases applying it suggests that a claim for public injunctive relief is viable only if it is contained in a pleading "primarily focus[ed]" on public relief.  To the contrary, *McGill* recognizes that, by virtue of the UCL's injury in fact requirement, public injunction claims are necessarily pursued "in connection with"

---

claims seeking redress for private injury.  *See* 2 Cal. 5th at 959.  Notably, in *McGill*, the plaintiff also sought "compensatory, monetary and punitive damages, and . . . restitution and/or disgorgement"—remedies which "do not constitute public injunctive relief."  *Id.* at 957 n.1.  But the inclusion of claims for private relief did not affect the viability of the claims for public injunctive relief.  *Id.*  This is likely because *McGill*'s test for public injunctive relief depends on the public versus private effects of the discrete remedy— not the "primary focus" of the complaint or lawsuit as a whole.

MoneyLion's proposed "primary focus" standard would also contravene federal pleading principals.  Generally, "the plaintiff is the master of [her] complaint."  *Weiss v. Kuck Trucking, Inc.*, 166 F. App'x 931, 932 (9th Cir. 2006).  Very limited circumstances, none that are present here, justify recharacterizing a plaintiff's claims.  *See id.* Further, under Rule 18(a), "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."  MoneyLion's argument is no more persuasive than one asserting that the presence of a contract claim in a complaint invalidates the tort character of a separately pleaded negligence count.  In short, claims for public injunctive relief, like any other claims, can exist independently, even inconsistently, with other claims.  Plaintiff's claims should be evaluated no differently.

## B. Plaintiff's FAC States Valid Claims for Public Injunctive Relief Under *Twombley* and *McGill*

The Court should therefore consider MoneyLion's argument, if at all, under *Twombly*'s standard for Rule 12(b)(6) motions.  That standard, as applied here, requires Plaintiff to plead "only enough facts to state a claim [for public injunctive] relief that is plausible on its face."  *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Contrary to MoneyLion's characterization of the public injunction claims as "vague and generalized," Plaintiff has more than satisfied her pleading burden here.

### 1. The FAC Seeks Public Injunctive Relief in Name and Substance

The relief requested under Counts II, IV, and VII satisfies the California Supreme Court's formulation of public injunctive relief.  Each of these claims seeks injunctive

---

relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *See McGill*, 2 Cal. 5th at 951.

*First*, The relief Plaintiff requests under the public injunction counts primarily seeks to "**prohibit[] unlawful acts**." The FAC generally describes a debt-trap scheme that relies on deceptive representations to the general public to entice consumers to connect their bank accounts and enroll in MoneyLion Plus. FAC at ¶¶ 59-78. These representations are disseminated to the general public through various media, including internet and social media advertising, sweepstakes promotions, targeted emails, referral incentives, and sponsorship of a NASCAR racing team. *Id.* at ¶ 191.

*Second*, the unlawful acts Plaintiff seeks to enjoin are of the kind "**that threaten future injury**," since they increase the likelihood that members of the public will link their bank accounts, enroll in MoneyLion Plus, and expose themselves to harm from MoneyLion's scheme. FAC at ¶¶ 59-78.

And, *third*, the harm Plaintiff seeks to enjoin primarily threatens "**the general public**," not Plaintiff individually. Plaintiff has already been injured by MoneyLion's practices and is therefore largely aware of them. For this reason, claims arising from misrepresentations made in advertising to the general public are typically, if not categorically, appropriate for public injunctive relief. *Specialty Merch. Corp.*, 2012 WL 12892158, at *8 ("[o]verwhelmingly, public injunctions are found in cases involving deceptive advertising" (collecting cases)); *Eiess v. USAA Fed. Sav. Bank*, 2019 WL 3997463, at *12 (N.D. Cal. Aug. 23, 2019). Plaintiff's requested relief "falls squarely within the ambit of public injunctive relief." *Speedy Cash*, 2019 WL 2423090, at *7.

2. *Johnson*, *Sponheim*, and *McGovern* are Distinguishable Because They Did Not Involve Misrepresentations to the Public

The cases MoneyLion cites in support of its argument to the contrary are distinguishable because none concerned public misrepresentations. Instead, each involved alleged breaches of an account agreement. The plaintiffs there unsuccessfully argued that the breached provisions of the account agreements constituted

---

"misrepresentations" about the defendant's practices. Critically, all three cases suggest that their outcomes would have changed had the requested injunctive relief targeted false advertising. *See Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV172477JGB, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018) (noting that "the [complaint] does not allege any facts about the public availability of the Deposit Account Agreement, [or] that the public availability of the document constitutes false advertising"); *Sponheim v. Citibank*, N.A., No. SACV19264JVSADSX, 2019 WL 2498938, at *5 (C.D. Cal. June 10, 2019) ("[plaintiff] cannot transform . . .  contractual agreement between Citibank and its account holders into marketing and advertising materials"); *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 858 (S.D. Cal. 2019) ("Plaintiff attempts to avoid this result by characterizing her account agreement . . . as 'marketing materials' . . .").

Here, Plaintiff need not rely on such a leap to locate an actionable public misrepresentation.   While Plaintiff does allege that MoneyLion has violated its agreements with customers, she also alleges that MoneyLion communicates various misrepresentations in ways that unquestionably qualify as advertising to the general public. *See* FAC, ¶ 191 (describing sweepstakes promotions, internet and social media advertising, email marketing, event sponsorships, and the like).   Thus, neither *Johnson*, *McGovern*, nor *Sponheim* allow MoneyLion to escape *McGill*.

\*     \*     \*

## CONCLUSION

MoneyLion does not dispute that, if triggered by the invalidation of any qualifying provision, the Poison Pill clause would operate to invalidate the entirety of the Arbitration Agreement in this lawsuit.  As explained above, at least one of Section 5(D) or 5(E)—two of the clauses linked to the Poison Pill—prohibits Plaintiff from seeking public injunctive relief in any forum and, thus, is invalid under *McGill*.  MoneyLion's entire Arbitration Agreement is therefore "null and void  in [this] proceeding."  The Court should deny MoneyLion's Motion to Compel Arbitration accordingly.

Dated: December 2, 2019.                    Respectfully Submitted,

                                            /s/ Kolin C. Tang
                                            Kolin C. Tang (SBN 279834)
                                            **SHEPHERD, FINKELMAN,**
                                            **MILLER & SHAH, LLP**
                                            1401 Dove Street, Suite 540
                                            Newport Beach, CA 92660
                                            Phone: 323-510-4060
                                            Fax: 866-300-7367
                                            Email: ktang@sfmslaw.com

                                            James C. Shah (SBN 260435)
                                            **SHEPHERD FINKELMAN**
                                            **MILLER & SHAH, LLP**
                                            1845 Walnut Street, Suite 806
                                            Philadelphia, PA 19103
                                            Telephone: 610-891-9880
                                            Facsimile: 866-300-7367
                                            Email: jshah@sfmslaw.com

                                            John F. Edgar (PHV forthcoming)
                                            Michael R. Owens (Admitted PHV)
                                            **EDGAR LAW FIRM LLC**
                                            2600 Grand Blvd., Ste. 440
                                            Kansas City, MO 64108
                                            Telephone:   (816) 531-0033
                                            Facsimile:   (816) 531-3322
                                            Email: jfe@edgarlawfirm.com
                                            Email: mro@edgarlawfirm.com

                                            *Attorneys for Plaintiff, individually, for*
                                            *the general public, and on behalf of all*
                                            *others similarly situated*

---